COMMONWEALTH *vs.* WALLACE W. GREEN & another.

Middlesex.    January 3, 1939. — April 10, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Practice, Criminal,* Presence of defendant, Amendment, Charge to jury, Verdict. *Jury and Jurors. Evidence,* Admissions, Competency, Of consciousness of guilt. *Pleading, Criminal,* Bill of particulars. *Homicide.*

The defendant had no right to be present at the hearing of requests by jurors to be excused before the empanelling of a jury to try an indict-ment for murder.

An admission by a defendant induced by a ruse or deception is admis-sible at the trial of an indictment against him.

In a criminal proceeding against two, no reversible error appeared on general exceptions to the admission of an entire conversation between the defendants in which each accused the other of the crime and defended himself, but each made certain admissions.

In admitting in evidence, at the trial of an indictment, a letter written by the defendant showing his consciousness of guilt of the crime charged in the indictment, the judge committed no error in refusing to exclude portions of the letter in which the defendant narrated other crimes committed by him.

At the trial of an indictment for murder, evidence as to the details of a robbery about ten days after the murder, by which the defendant obtained an automobile used by him to go to a distant city where he had no occasion to go, was admissible as showing his consciousness of guilt.

It is within the power of the trial court to allow the Commonwealth in a murder case to amend, in a manner not prejudicial to the defendant, a specification or bill of particulars previously filed by it upon motion by the defendant.

If two persons, one armed with a pistol, entered a store for the purpose of robbing the storekeeper in violation of G. L. (Ter. Ed.) c. 265, § 17 or § 21, and attempted the robbery, and then one or both decided not to proceed further with the crime and to escape, and the storekeeper was shot and killed by one of them in order to facilitate their escape, both might be found guilty of murder in the first degree.

No violation of G. L. (Ter. Ed.) c. 231, § 81, appeared at a criminal trial in a charge to the jury wherein the judge marshalled the evidence and then left to them the question of its sufficiency to prove guilt.

No instructions respecting manslaughter were required at a trial for murder where the evidence showed only that the crime committed was a killing in the course of an attempted armed robbery.

Upon a jury's bringing in a verdict of "guilty" of "the charges as brought" at a murder trial, it was proper for the judge to refuse to accept or record the verdict and to send the jury back to reconsider it respecting the degree of murder.

INDICTMENT, found and returned on July 1, 1938, against Wallace W. Green and Walter St. Sauveur.

The indictment was tried before *Gray*, J.

*R. E. McCarthy*, (*R. A. Shea* with him,) for the defendant Green.

*G. B. Lourie*, for the defendant St. Sauveur.

*W. J. McCluskey*, Assistant District Attorney, for the Commonwealth.

LUMMUS, J.   The defendants, youths of twenty-one and eighteen years respectively, were tried together upon an indictment charging them jointly with the murder of William Phillips.   Each was found guilty of murder in the

first degree. Sentence of death was imposed upon each. G. L. (Ter. Ed.) c. 279, § 4. St. 1935, c. 437, § 3. Each brings the case here by appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

A woman who lived on the third floor across the street from the small variety store kept by William Phillips was the only eyewitness to his killing. About ten minutes after eleven o'clock on the evening of May 31, 1938, her attention was attracted by a noise of breaking glass in the store, followed immediately by seven pistol shots in rapid succession. On reaching the open window, after the shots had been fired, she saw two men in the doorway of the store, running out. She could not identify them. They turned to their left, and disappeared in an alley which leads to the back door of the house where St. Sauveur lived, less than two hundred feet away. Then Phillips staggered from the rear of the store to the door, and fell face down upon the threshold. A bullet from a German Mauser automatic pistol of .32 caliber had entered his chest, pierced his heart, and passed out through his back. He died without regaining consciousness. A prompt examination by police officers disclosed glass from broken bottles in the middle of the store, between the counters. It could have been found that Phillips threw the bottles in self defence against an attempted armed robbery by the two men. Counsel for each defendant conceded in argument to the jury that the two men who were in the store at the time of the killing were there, armed with a pistol, for the purpose of robbing Phillips. Seven shots were fired from the middle of the store at some person or object behind the counter at the left of the store as one enters. All seven bullets were recovered. All had been fired from the same pistol.

A pistol was identified by expert testimony as the one from which all the bullets, including the fatal one, were fired. Each defendant admitted and testified that at some time he possessed that pistol. Green testified that he knew nothing of the crime, but had sold the pistol to St. Sauveur for $25 a short time before. The pistol was found upon

St. Sauveur in Salt Lake City, for which place he had started on June 9, 1938, with one Richards in an automobile obtained by them by a robbery. St. Sauveur, after telling many conflicting stories, told the police and testified at the trial that he and Green and a man known only as Joe were together on the evening of May 31, 1938, trying to find someone to rob; that at last Green proposed to rob Phillips; that St. Sauveur, being known to Phillips, refused to take part; that by arrangement St. Sauveur remained in his house while Green and Joe set out with a pistol to rob Phillips; that St. Sauveur heard shots; that Green and Joe soon returned by the back door; that the next morning Green gave St. Sauveur the pistol in question to get rid of; that Green and Joe then departed separately; and that St. Sauveur buried the pistol in the cellar at Richards's house, digging it up to use it in a robbery on June 9, 1938, and to take it to Salt Lake City. The story of each defendant, if believed, absolved him from liability as a principal in the robbery and killing of Phillips. The Commonwealth contended that Joe did not exist.

We discuss in order the assignments of error that have been argued. No error appears in the others.

1. The first assignment of St. Sauveur relates to the act of the judge in listening to requests of certain jurors to be excused, and in excusing certain jurors, all before the empanelling of a jury to try the defendants and in the absence of the defendants. The right of a defendant to be personally present during a trial for felony (G. L. [Ter. Ed.] c. 278, § 6), does not extend to proceedings before the trial begins. See *Commonwealth* v. *Snyder,* 282 Mass. 401, 414, affirmed 291 U. S. 97; *Commonwealth* v. *Millen,* 289 Mass. 441, 452–455. The judge acted in accordance with a common practice, to which there is no legitimate objection.

2. The second assignment of St. Sauveur is to the reception in evidence of statements containing admissions, made by him to police officers in Salt Lake City, after they had attempted to convince him, perhaps successfully, by a pretended telegram from a chief of police in Massachusetts, that Green had confessed and had accused St. Sau-

veur of the actual shooting. There is no rule of law that an admission or even a confession is inadmissible in evidence because induced by a ruse or deception. *Commonwealth* v. *Flood,* 152 Mass. 529. Wigmore, Evidence (2d ed.) § 841.

3. The third assignment of St. Sauveur and the first of Green, are based upon the admission in evidence of what each said during a verbal dispute between them in the presence of police officers. Each defendant accused and reviled the other while defending himself. They invoke the principle that an accusation met by a complete denial is not an admission. *Commonwealth* v. *Spiropoulos,* 208 Mass. 71, 74. *Commonwealth* v. *Gangi,* 243 Mass. 341. *Commonwealth* v. *Graham,* 279 Mass. 466. *Commonwealth* v. *Kosior,* 280 Mass. 418, 422. *Commonwealth* v. *Osman,* 284 Mass. 421, 424. *Commonwealth* v. *Polian,* 288 Mass. 494, 496. But during the dispute each defendant made admissions. St. Sauveur admitted being with Green on the night of the killing, having possession of the pistol, and telling Richards that he, St. Sauveur, did the killing. Green admitted having possession of the pistol before the killing, and further said, "I will stick to my story, gentlemen. It is just as good as any." The exceptions taken were to the dispute as a whole, and not to any particular statements. *Commonwealth* v. *Johnson,* 199 Mass. 55, 61. *Carroll* v. *Carroll,* 262 Mass. 10, 13. *Commonwealth* v. *Osman,* 284 Mass. 421, 424. No error appears.

4. The fourth assignment of St. Sauveur is to the refusal of the judge, while admitting in evidence letters written by St. Sauveur to Green while they, with Richards, were in jail awaiting trial, to exclude narrations by St. Sauveur of other crimes that he had committed. St. Sauveur was deploring his helpless situation as to escape, due to the fact that Green was not permitted to go into the jail yard with him, though Richards was. St. Sauveur wrote: — "But as it is, I'm alone and have no help. As for Richards, he couldn't beat his way out of a paper bag. In the first place I won't take him with me. I've learned my lesson with him. When we kidnapped the guy [apparently re-

ferring to the robbery by which St. Sauveur and Richards obtained an automobile on June 9, 1938] I had to do all the work. I had to stick the guy up, take him out of the car, tie him up, and frisk him, Richards was so nervous he dam near couldn't talk. Then another time, when we pulled a job down in Somerville Kent. We walked in the bar room and I ordered a couple of whiskeys. I was flat broke and didn't even have a penny, there was a guy sitting in a booth reading a paper so I told the guy at the bar to hand over the dough. Which he quickly did. I scooped up the dough, about $86 and I told Richards to take the other guy who was reading the paper and didn't know a thing about what was going on into the back room. Richards was afraid to do it so that got me sore, and I walked over to the booth and without a word I cracked the gun over his skull and walked out."

Ordinarily the commission by a defendant of an independent crime cannot be shown, even by his own admission, as evidence tending to show the commission of the crime charged. *Commonwealth* v. *Kosior*, 280 Mass. 418, 423. The fact that a defendant appears to be a bad man, capable of, and likely to commit, such a crime as that charged, might lead a jury to dispense with proof beyond reasonable doubt that he did actually commit the crime charged. But evidence otherwise admissible does not cease to be so because it happens to show the commission of an independent crime. *Commonwealth* v. *Snell*, 189 Mass. 12, 21. *Commonwealth* v. *Jackson*, 132 Mass. 16. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Murphy*, 282 Mass. 593, 598.

The letters written by St. Sauveur to Green while both were in jail showed despair of acquittal at a trial, eagerness to escape from jail by violence, belief that a violent escape could be accomplished if the two could get together, hope that a pistol might be procured, and finally a plan of escape which involved murder with a knife if anyone should interfere. All this was admissible to show consciousness of guilt. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314. *Commonwealth* v. *Mercier*, 257 Mass. 353, 368–369. Wig-

more, Evidence (2d ed.) § 276. The unwillingness of St. Sauveur to seek help from Richards for the reasons stated, tended to show the extent of his desperation and his willingness to use any degree of violence in his escape.

5. The fifth assignment of St. Sauveur is to the admission in evidence of the testimony of one Churchill as to the details of the robbery on June 9, 1938, by which his automobile was obtained by St. Sauveur and Richards and subsequently driven by them to Salt Lake City. The departure of St. Sauveur for a distant place where, so far as appears, nothing called him, had evidential force as indicating a consciousness of guilt. The means by which he obtained transportation showed the intensity of his desire to get away.

6. The second and sixth assignments of Green attack the allowance of an amendment to a specification or bill of particulars filed by the Commonwealth in response to Green's motion. The original specification was: "The Commonwealth alleges that the murder was committed in the attempted commission of armed robbery in which the defendants participated." The judge, subject to exception by Green, allowed the Commonwealth to amend its specification by substituting a statement that the murder was committed in the commission or attempted commission of acts, describing them, punishable by imprisonment for life because within the prohibitions of G. L. (Ter. Ed.) c. 265, §§ 17, 21. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 315. *Commonwealth* v. *Devereaux*, 256 Mass. 387, 391.

In this there was no error. The indictment was in the form held sufficient in *Commonwealth* v. *Jordan*, 207 Mass. 259, and *Commonwealth* v. *Bartolini*, 299 Mass. 503, 509, and the requirement of specifications or particulars was discretionary; though we do not suggest that the result would be different if the statement in the specifications or particulars had been essential to the description of the crime. The power of the court to require specifications or particulars is a common law power, applicable equally to civil and criminal cases. *Commonwealth* v. *Giles*, 1 Gray, 466, 469. *Commonwealth* v. *Wood*, 4 Gray, 11. *Stockwell*

v. *Silloway,* 100 Mass. 287, 295. Specifications or particulars have always been amendable in civil cases. *Babcock* v. *Thompson,* 3 Pick. 446. *Burgess* v. *Bugbee,* 100 Mass. 152. We see no reason why they should not be equally amendable in criminal cases. See *Commonwealth* v. *Bartolini,* 299 Mass. 503, 509. The express power to amend for variance, stated in G. L. (Ter. Ed.) c. 277, § 40, does not restrict the inherent power of the court. Neither defendant suggested any possible prejudice from the course taken. Decisions relating to the amendment of indictments (*Commonwealth* v. *Snow,* 269 Mass. 598; *Commonwealth* v. *Ventura,* 294 Mass. 113; *Commonwealth* v. *DiStasio,* 294 Mass. 273, 278), are not in point.

7. The eighth and tenth assignments of St. Sauveur and the fourth assignment of Green relate to the refusal of the judge to charge the jury that if the defendants entered the store for the purpose of violating G. L. (Ter. Ed.) c. 265, § 17 or § 21, but one of the defendants abandoned that purpose before the shooting, he could not be found guilty of murder "in the commission or attempted commission" of such an offence. The judge instructed the jury in substance that if the defendants entered the store for the purpose of committing one of the offences described, and killing the victim was a natural and probable result, and the attempted commission of the offence began, both were guilty of murder in the first degree, although one or both had decided before the shooting not to carry the attempt further but to escape, and the fatal shot was fired in order to facilitate an escape.

In *Commonwealth* v. *Devereaux,* 256 Mass. 387, the defendant Devereaux remained on guard on the first floor of a railway car barn, while other defendants robbed the office upstairs in violation of G. L. c. 265, §§ 17, 21, and took the stolen money to an automobile, where they awaited Devereaux. After that, Devereaux encountered a watchman and killed him. Requested instructions that the robbery was over at the time of the shooting were held rightly refused. The court said (page 393), "The original plan of robbery had not been abandoned; the money had not

been surrendered or relinquished; none of the defendants were under arrest. Even if some of the defendants were not in the building when the homicide was committed, they were at the time carrying away the stolen property; they had it in their possession; they were awaiting the arrival of Devereaux who was then carrying out the purpose of the conspiracy."

As applied to the evidence in this case the instructions given were correct. The statutory words are "murder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life." If the crime or attempted crime is completely over, the statutory words do not apply. The crime or attempted crime is a fact, to be looked at objectively, and its beginning and end are marked by what is done, rather than by what is thought. If robbers entered the store, armed with a pistol, for the purpose of committing one of the crimes specified, and for that purpose put Phillips in fear, as the evidence showed and as counsel for each defendant conceded, the occurrence which is properly described as an attempted robbery was not ended merely because one or both of the robbers ceased to desire to proceed, had in mind only a purpose to escape, and shot in the furtherance of that purpose. To end an attempted robbery, where the robbers remain in freedom and possessed of a deadly weapon at the place of the attempted robbery until a fatal shooting takes place, there must be at least an appreciable interval between the alleged termination and the fatal shooting, a detachment from the enterprise before the shooting has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon it. *People* v. *Nichols*, 230 N. Y. 221, 229. *State* v. *Mule*, 114 N. J. L. 384, 392–393. See also *Commonwealth* v. *Trippi*, 268 Mass. 227, 232.

8. The seventh assignment of St. Sauveur and the fifth of Green are in substance that the judge expressed an opinion upon the facts in violation of G. L. (Ter. Ed.) c. 231, § 81, which, we assume, still applies to criminal

cases (*Commonwealth* v. *Barry*, 9 Allen, 276) though, since R. L. (1902) c. 173, § 80, included in the civil practice act. We have examined the charge and find no error. It was a proper mode of charging the jury, to marshal the evidence against the several defendants, and then to leave the question to the jury whether the evidence convinced them of guilt beyond a reasonable doubt. The judge did no more. "If trial by jury is to retain its efficiency, the presiding judge by means of suitable instructions must enable jurors to see their way clearly to a right verdict. . . . If an unbiased analytical statement of the testimony and of the law distinctly indicates the party who is entitled to prevail, this furnishes no just reason for the defeated party to complain, either of the method employed or of the adverse verdict." Braley, J., in *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495, 502.

9. The ninth assignment of St. Sauveur and the seventh of Green are to the refusal of the judge to leave to the jury the question whether the defendants were guilty of manslaughter, and to instruct the jury as to the nature of that crime. There was no evidence upon which the defendants could have been found guilty of manslaughter only. Whatever may be the rule in a case where there is such evidence, it is plain that in this case no instructions as to manslaughter were required. The evidence showed, and counsel for both defendants conceded in argument to the jury, that the men who entered the store were engaged in an attempt at armed robbery. Under those circumstances the homicide could not be found to be manslaughter. See *Bandy* v. *State*, 102 Ohio St. 384, 21 Am. L. R. 594, and note. A homicide committed in the commission of a felony is murder at common law. *Commonwealth* v. *Devereaux*, 256 Mass. 387, 393, 394. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 310, 315. Instructions inappropriate to the case on trial, though abstractly correct, ought not to be given. *Commonwealth* v. *Soaris*, 275 Mass. 291, 299. *Commonwealth* v. *McKnight*, 283 Mass. 35, 40. *Commonwealth* v. *Clark*, 292 Mass. 409, 415.

10. The eighth assignment of error of Green relates to

the act of the judge, when the jury returned with a verdict merely of "guilty" of "the charges as brought" against each defendant, in refusing to accept or record it, and in sending the jury back to reconsider their verdict, after which the jury returned with a verdict of guilty of murder in the first degree against each defendant. There was no verdict having any effect in law until a verdict was affirmed and recorded. *Commonwealth* v. *Tobin,* 125 Mass. 203. *Mason* v. *Massa,* 122 Mass. 477, 480. *Commonwealth* v. *Delehan,* 148 Mass. 254. *Flaherty* v. *Boston Elevated Railway,* 235 Mass. 422, 424. *Commonwealth* v. *Clifford,* 254 Mass. 390, 392. *Newell* v. *Rosenberg,* 275 Mass. 455, 459. The course taken was correct. As to each defendant the entry will be

*Judgment affirmed.*