COMMONWEALTH *vs.* LEONARD L. LUSSIER
(and a companion case[1]).

Hampden.   May 2, 1955. — July 14, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Homicide. Robbery. Conspiracy. Evidence,* On cross-examination, Discretionary control of evidence. *Practice, Criminal,* Ordering verdict; Amendment; Exceptions: general exception; Charge to jury; Requests, rulings and instructions; New trial; Special questions to jury. *Pleading, Criminal,* Bill of particulars.

At a criminal trial the judge as matter of discretion might properly exclude questions on cross-examination of the police captain in charge of investigating and preparing the case with respect to police procedure in obtaining written statements of expected testimony and his opinion as to the importance of such statements. [87–88]

No error appeared at a murder trial in a refusal by the judge, when the Commonwealth rested, to rule on the legal sufficiency of the evidence until the defendant also had rested. [88]

Evidence at the trial of an indictment warranted findings that an unsuccessful attempt by the defendant, while armed with a loaded pistol, to rob a store had not terminated when the defendant sought to escape from the store by its street door, that his shooting and killing one who tried to prevent his escape and with whom he strug-

[1] The companion case is that of Commonwealth *vs.* George E. Parks.

gled at or just outside the door was incidental to and a natural and probable consequence of the attempted robbery, and that the defendant committed murder in the first degree. [91]

There was no error after final arguments at the trial of an indictment in the allowance of a motion by the Commonwealth to amend a bill of particulars in a manner which did not enlarge the scope of the indictment and only served to make specific the contentions of the Commonwealth which had been in issue during the trial. [91–92]

A general exception to the charge to the jury on a certain issue at the trial of an indictment was without merit where that portion of the charge taken as a whole disclosed no error. [92]

An instruction at the trial of an indictment for murder that a verdict of guilty of manslaughter would not be warranted was correct where the killing of a private person by the defendant, even if it was not an incident of an attempted robbery of a store by the defendant, was nevertheless done by the defendant in resisting arrest by the victim while the defendant was seeking to escape from the store, and was not done under any extenuating circumstances. [92–93]

A judge whose charge at a criminal trial accurately and fully covered the matters in issue was not required to give in terms instructions requested by the defendant. [93]

There was no error in a criminal case in the denial of a motion for a new trial based on the ground that the verdict was against the law where the motion presented no question of law which could not have been raised at the trial. [93]

A verdict of guilty of murder in the first degree was warranted by evidence that the defendant conspired with another to engage in a "hold up" of a store, that the defendant's fellow conspirator, armed with a loaded pistol, entered the store while the defendant waited near its entrance in the driver's seat of an automobile with the motor running, that after the fellow conspirator had unsuccessfully attempted to rob the store he sought to escape by its door, that a struggle then ensuing between him and a person who tried to prevent his escape culminated in his shooting and killing that person, and that he then jumped into the automobile saying, "I shot a man," and the defendant drove it away at a high rate of speed. [93–94]

Submission of special questions to the jury in a criminal case is discretionary with the trial judge. [94]

Two INDICTMENTS, found and returned on May 7, 1954. The indictments were tried together before *Murray*, J.

*James L. Vallely*, (*Nicholas C. Crossen, Jr.*, with him,) for the defendant Lussier.

*Francis M. Collins*, for the defendant Parks.

*Stephen A. Moynihan*, District Attorney, for the Commonwealth.

WILLIAMS, J. These are indictments for the murder of one Robert P. Blanchard. They were tried together, each defendant was found guilty of murder in the first degree, and sentences were imposed in accordance with the recommendation of the jury that sentences of death be not imposed. (G. L. [Ter. Ed.] c. 265, § 2, as appearing in St. 1951, c. 203. *Commonwealth* v. *McNeil,* 328 Mass. 436.) The cases are before us on the appeals of the defendants accompanied by their respective assignments of error, a summary of the record, and a transcript of the evidence as required by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341.

Each indictment was in the form provided by G. L. (Ter. Ed.) c. 277, § 79, and alleged that the defendant on January 13, 1954, at Springfield "did assault and beat one Robert P. Blanchard, with intent to murder him, and by such assault and beating did murder the said Robert P. Blanchard." On motion by the defendant Lussier the Commonwealth filed a bill of particulars in his case, wherein it was stated that the offence was committed between 8:30 P.M. and 9 P.M. on January 13, 1954, at or near the front entranceway of number 166 Eastern Avenue, Springfield, and that the defendant fired an automatic pistol at the deceased, causing his death.

There was evidence that each defendant was twenty-one years old. Lussier was in the navy and was stationed in Boston. He had formerly lived with foster parents in Agawam. The defendant Parks lived in Springfield. The men met at a lunch room in Springfield at about 4:30 P.M. on January 13, 1954. In the course of talk between them it appeared that Lussier needed money and at his suggestion they agreed to engage in a "hold up." About 6 P.M. they went to a parking lot, and while Parks waited near by Lussier stole an automobile from the lot. They drove to the home of Lussier's foster parents in Agawam. Lussier went into the house and brought out an overcoat, a bandana kerchief, a semiautomatic pistol loaded with a clip of eight cartridges, and a navy "billy" club. After driving about

for some time they stopped near a package store in Springfield, called the "Six Corners." They got out of the automobile, Lussier carrying the pistol and Parks the club. They looked into the store, and seeing several customers there, returned to the automobile and drove away, Lussier operating the automobile. After proceeding through several streets they passed Phelan's Package Store at 166 Eastern Avenue. Lussier suggested holding up the store. He stopped the automobile in a side street and told Parks to get in behind the wheel and to keep the motor running. Lussier got out, put on the overcoat over his navy uniform, placed a straw hat which he had found in the automobile on his head, and slipped the loaded pistol into a pocket of the overcoat. Parks then drove the automobile southerly on Eastern Avenue to a point about thirty feet to the south of the entrance to the package store and on the same side of the street, and remained there in the driver's seat with the motor running. Lussier, after waiting for some customers to leave, entered the store wearing the overcoat and the bandana knotted around his neck. He carried the loaded pistol in his hand. He pulled the bandana up so that it covered the lower part of his face. It was shortly before 9 P.M. and Miss Mary Phelan, the proprietor of the store, was behind the counter. Pointing the pistol in her direction Lussier said, "This is a hold up" and ordered her to open the cash register. For some reason she did not or could not open it. One Timothy McCarthy, a relative of Miss Phelan, came in at that time and Lussier ordered him to open the register. McCarthy was unable to open it. Lussier then tried himself to open it but without success. Meanwhile Miss Phelan was attempting to use the telephone. Lussier turned and hurried to the front door by which he had entered. The door was three feet wide and opened outwards. As shown on photographs which are in evidence it was located about four feet in from the sidewalk at the back of a recess or open vestibule formed by the store windows. As Lussier was at or near this door Miss Phelan saw someone approaching the door from the side-

walk and shouted "Grab him." When Lussier had opened
the door about two feet he was met by Blanchard, the de-
ceased, who had parked his automobile in front of the store
and was seeking to enter the store. The men struggled at
the door. Two shots were fired in close sequence from the
pistol held by Lussier, and Blanchard collapsed on the side-
walk or in the street in front of the store entrance. He had
been shot in the back below the left shoulder, the bullet
penetrating both lungs and lodging in his right chest. He
died from the wound before reaching the hospital. It was
the second shot which killed him. The first bullet went
through his clothing and through the front window of the
store at a point where it joined the side window of the re-
cess. Lussier ran to the automobile in which Parks was
waiting, and jumped in saying, "I shot a man." Parks
drove away at a high rate of speed, skidded in turning into
a side street, and stalled the automobile in a snow bank.
The automobile was abandoned and both men ran from the
scene. Lussier threw away his coat, pistol and clip and
Parks the navy club.

Both defendants were separately arrested within a short
time and each admitted to the police that he participated
in the homicide substantially in the manner and to the ex-
tent stated in the above recital of evidence. At the trial,
however, Parks testified that he withdrew from the enter-
prise after the ineffective approach to the first package store.
Lussier testified that each of the shots from his pistol was
fired by accident and produced a witness named Samson who
testified that the fatal shot was fired when Lussier slipped
on the ice while running toward the automobile.

The assignments of error filed by Lussier, with paren-
thetical reference to the exceptions on which they are based,
will first be considered. Assignments 8, 9, 13, and 18
were waived at the time of oral argument. Assignment 1
(exceptions 3, 4, and 5) relates to the exclusion on cross-
examination of questions to the Springfield captain of de-
tectives who was in charge of the investigation of the
shooting and, after the arrests, of the preparation of the

cases for trial. They concerned the procedure of the police department in the matter of obtaining written statements of expected testimony and the opinion of the witness as to the importance of such statements. Their exclusion was discretionary with the judge (*Commonwealth* v. *Corcoran*, 252 Mass. 465, 486), and no error appears.

The exclusion of other questions to the same officer in cross-examination is the subject of assignment 2 (exception 6) and assignment 3 (exception 7). He was asked if information which he had received that witnesses had seen Lussier and Blanchard struggling explained the location of the wound back of Blanchard's left shoulder and if a statement made by Lussier that he shot Blanchard as he charged him was consistent with such a wound. The questions were properly excluded.

Assignments 4, 5, and 6 (exceptions 9, 10, and 11) relate to the exclusion of the following questions on cross-examination to the same officer, "Why did you then lie when you said that Lussier had told you it was an accident?" "Have you any information . . . that when Timothy McCarthy said that Lussier and Blanchard struggled prior to the firing of the shots that he would be wrong?" "He [the officer who found the bullet] is the fellow also that didn't tell you at any time that Samson [the defence witness] had told him that he had witnessed a struggle between Lussier and Blanchard?" They were all properly excluded.

Assignment 7 (exception 12). When the Commonwealth rested its case, Lussier presented two motions, (1) that the judge direct the jury that the Commonwealth had failed to prove so much of the indictment as alleged first degree murder; and (2) that the indictment be reduced from a charge of first degree murder to a charge of second degree murder. He excepted to the statement of the judge that he would hear the motions when Lussier had rested. Until all the evidence had been closed on both sides the judge could not be required to rule upon the legal sufficiency of the evidence already introduced. *Commonwealth* v. *Bader*, 285 Mass. 574, 575–576.

At the conclusion of the evidence Lussier presented three motions: (1) that the jury be directed to return a verdict of not guilty of murder in the first and second degrees; (2) that the jury be directed that the Commonwealth had failed to prove so much of the indictment as alleged first degree murder; and (3) that the indictment be reduced to manslaughter. The judge denied the motions and Lussier excepted. Their denials are respectively the bases of assignments 10, 11, and 12 (exceptions 21, 22, and 23). The motion for a directed verdict of not guilty on the charge of murder in the first degree could not have been allowed if there was evidence warranting the jury in finding that Blanchard was killed by Lussier "with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life." G. L. (Ter. Ed.) c. 265, § 1.

It is provided by G. L. (Ter. Ed.) c. 265, § 17, as appearing in St. 1952, c. 406, § 1, "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years"; and by G. L. (Ter. Ed.) c. 265, § 21, "Whoever, with intent to commit larceny . . . attempts or threatens to kill, confine, maim, injure or wound, or puts any person in fear, for the purpose of stealing from a building . . . or other depository of money, bonds or other valuables . . . whether he succeeds or fails in the perpetration of such larceny or felony, [shall] be punished by imprisonment in the state prison for life or for any term of years."

The evidence was sufficient to warrant the jury in finding that Lussier attempted to commit the crime of robbery in such manner and in such circumstances that, if he had effected the robbery, he could upon conviction have been sentenced to imprisonment for life. See *Commonwealth* v. *Nickologines*, 322 Mass. 274, 277; *Commonwealth* v. *Novicki*, 324 Mass. 461, 464–465. We do not understand that this

is controverted by Lussier. It is his contention that, although he had attempted to commit the crime of robbery in the package store, he had abandoned the attempt and at the time of the shooting was not, as matter of law, engaged in such attempt.

Doubtless when Lussier met Blanchard he was intending to leave the store. He had walked or run to the door by which he had entered and had partially opened the door. There was evidence of a struggle between him and Blanchard at that point. Lussier says in his written statement, "I started to run out when a man came in and tried to grab me. He pushed the door on me and I finally got out. Then he swung at me and knocked me back and the gun went off. Then as he charged me I got panicky and tried to run but he was almost on me and I kept telling him to stay back. I didn't know what to do and I pulled the trigger without realizing what I was doing. He fell and I ran away." The jury could find that the struggle between the men which culminated in the fatal shooting occurred at the door or in the recess between the door and the sidewalk, in either case apparently on a part of the store premises, and that at the time Lussier with a loaded pistol in his hand was trying to escape from the scene of his crime. The law applicable to such a situation was stated in *Commonwealth* v. *Green*, 302 Mass. 547, 555, in the following language: "[T]he occurrence which is properly described as an attempted robbery was not ended merely because one or both of the robbers ceased to desire to proceed, had in mind only a purpose to escape, and shot in the furtherance of that purpose. To end an attempted robbery, where the robbers remain in freedom and possessed of a deadly weapon at the place of the attempted robbery until a fatal shooting takes place, there must be at least an appreciable interval between the alleged termination and the fatal shooting, a detachment from the enterprise before the shooting has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon

it." We have held that a killing in connection with a rape can be found to be an incident of that crime although following it in point of time and committed to avoid detection. *Commonwealth* v. *Osman*, 284 Mass. 421, 425. *Commonwealth* v. *Gricus*, 317 Mass. 403, 412.

In the instant case the evidence presented a question for the jury whether the shooting was incidental to and a natural and probable consequence of the attempted robbery, or was independent of such attempt. The motions for a directed verdict as to the charge of murder in the first degree and for a ruling that the evidence did not warrant a verdict of guilty of such offence were rightly denied. Clearly the judge could not have reduced the charge to manslaughter.

Assignments 14 and 15 (exceptions 26 and 27) relate to the allowance by the judge after the final arguments of a motion by the Commonwealth to file the following amendment to its bill of particulars: "The Commonwealth alleges that the defendant, while attempting to commit an armed holdup in the Phelan Package Store located at number 166 Eastern Avenue, Springfield, Massachusetts, and/or while fleeing from the said package store, at or near the front entrance-way of said store, did fire an automatic pistol at the deceased, Robert Blanchard, causing his death. The Commonwealth further alleges that the defendant, in pursuance of a conspiracy with one George Parks to commit an armed holdup in the said Package store, and thereafter to escape from the scene of said holdup, had previously arranged for a car, driven by the said Parks, to await his exit after the holdup, and while attempting to return to said car to effect his escape, did fire an automatic pistol at the deceased, Robert Blanchard, causing his death."

Counsel for Lussier stated that he had no objection to the allowance of the motion but after allowance saved an exception. It is not clear how Lussier was prejudiced as the amended particulars did not enlarge the scope of the indictment (*Commonwealth* v. *Sacco*, 255 Mass. 369, 412) and only served to make specific the contentions of the Commonwealth, which had clearly been at issue during the course of

the trial. We see no error in permitting the Commonwealth to place these contentions formally on record. They did not affect the right of Lussier to claim a variance between averment and proof if such existed. *Commonwealth* v. *Green*, 302 Mass. 547, 553–554. See G. L. (Ter. Ed.) c. 277, § 40.

Assignment 16 (exception 28) relates to the denial of a motion for a directed verdict on the charges of first and second degree murder presented after the filing of the amended particulars. For reasons stated in reference to assignments of error 10, 11, and 12 there was no error.

Assignments 17, 19, 20, and 21 (exceptions 29, 31 to 45) relate to the judge's charge and his refusal to give certain instructions to the jury as requested.

Assignment 17 refers to the charge as reported on pages 826 through 831 of the transcript concerning conspiracy. We have no means of knowing to what specific part of the charge reported on these five or six pages Lussier intended to except. Taken as a whole we find no error in the charge so far as it relates to the law of conspiracy.

Assignment 19 is based on the judge's instruction that the jury would not be warranted in returning a verdict of manslaughter. We think that the instruction was correct. See *Commonwealth* v. *Devereaux*, 256 Mass. 387, 393. If the jury found that the shooting of Blanchard was not an incident in the attempted commission of armed robbery it was nevertheless an incident of an effort to escape after the commission of a felony. A private person may lawfully arrest one who in fact has committed a felony (*Rohan* v. *Sawin*, 5 Cush. 281, 285; *Pilos* v. *First National Stores Inc.* 319 Mass. 475, 478), and to kill in resisting such arrest is murder and not manslaughter. See *Commonwealth* v. *Carey*, 12 Cush. 246. Manslaughter is the unlawful killing of another without malice and malice is any unlawful and unjustifiable motive. *Commonwealth* v. *Webster*, 5 Cush. 295, 304. *Commonwealth* v. *Demboski*, 283 Mass. 315, 322. The motive here was plainly unjustifiable. By shooting Blanchard, Lussier sought to avoid arrest for a crime which ad-

mittedly he had committed. There was no evidence of reasonable provocation (see *Commonwealth* v. *Soaris,* 275 Mass. 291, 299; *Commonwealth* v. *Young,* 326 Mass. 597, 601) or of other extenuating circumstances.

Assignment 20 (exceptions 33 to 44) relates to the refusal by the judge to give the instructions specified in the requests of Lussier numbered 14, 16, 17, 18, 19, 23, 24, 26, 30, 31, 32, and 34. Extended discussion of these requests is not required. The charge of the judge was careful and accurate and fully covered all matters which on the evidence were appropriate for the consideration of the jury. He was not bound to instruct in the exact language of the requests. There was no error.

Assignment 21 (exception 45) relates to the judge's definition of the degrees of murder. There is no specification of the language to which the exception was taken. The charge in reference to this matter seems on the whole accurate and free from error.

We turn to the assignments of error filed by the defendant Parks.

Assignment 1 is based on the denial of his motion for a new trial on the grounds that the verdict was against the law and the weight of the evidence. The motion presents no question of law which was not passed upon at the trial or which could not have then been raised. Whether the verdict was against the weight of the evidence was a matter for the determination of the judge. There was no error in denying the motion.

Assignments 2 and 3 (exceptions 20 and 18) may be considered together. They relate to the denial of two motions made by Parks at the conclusion of the evidence that the indictment "charging first degree murder be reduced to second degree murder" and that "a finding of not guilty be made on the charges." If we understand the motions they were filed for the purpose of obtaining a ruling on the question whether the evidence warranted a finding of guilty of murder in either first or second degree. It is plain that there was evidence of a conspiracy between the de-

fendants to commit the crime of armed robbery. If a person combines and confederates with others to accomplish an illegal purpose, he is criminally liable for the acts of each and all who participate with him in the execution of the unlawful design. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 395–396, and cases cited. As stated in the *Devereaux* case (page 395) it was not essential that murder be a part of the original plan, if it was one of the probable consequences of the robbery which was intended to be effected by the use of a deadly weapon. Parks as well as Lussier could on the evidence be rightly convicted of murder in the first degree. It could not be ruled that Parks had abandoned the joint enterprise before the fatal shooting or that if found guilty of murder it could only be of murder in the second degree.

Assignment 4 (exception 24) is based on the refusal of the judge to submit to the jury the question, "Was the attempted robbery over when the deceased Robert P. Blanchard was killed?" Submission of special questions to be answered by a jury is a permissible practice at least in the trial of civil cases. *Wallace* v. *Ludwig,* 292 Mass. 251, 259. *Burgess* v. *Giovannucci,* 314 Mass. 252, 256. It is rarely resorted to in criminal trials, and in any case is discretionary with the judge. See G. L. (Ter. Ed.) c. 231, § 124. There was no error.

In accordance with the mandate of G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, we have considered the law and the evidence and are satisfied that no reason exists for requiring a new trial in either case.

*Judgment in each case affirmed.*