COMMONWEALTH *vs.* ROBERT G. DELLELO.

Suffolk.   May 3, 1965. — July 8, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Homicide.*

At the trial of an indictment for murder in the first degree, a motion by the defendant for a directed verdict of not guilty was properly denied where a finding, that an attempted robbery by the defendant and a confederate, while armed with fully loaded pistols, of a jewelry store located on an upper floor of a building was not completely over when the confederate shot and killed a police detective on a public street a short distance from the doorway of the building, was warranted by evidence that the attempted robbery was interrupted by the sounding of an alarm in the store, that the defendant and his confederate immediately fled down a stairway to the doorway and the defendant there assaulted another police officer, and that the defendant then ran down the street in one direction, threatening passersby with his pistol, but was captured, and his confederate ran down the street in the opposite direction and encountered and shot the detective.   [529–531]

At the trial of an indictment for murder in the first degree of a police detective shot and killed by a confederate of the defendant on a public street a short distance from the doorway of a building from which they had run in opposite directions after their attempted armed robbery of a jewelry store on an upper floor had been interrupted by the sounding of an alarm there, testimony by the defendant that he said to his confederate before entering the store "Hey, wait a minute, I don't want any shooting. I don't want to get involved in no shooting" and that when

the alarm sounded he yelled "I . . . [don't] want any part of this action, I am bailing out," even if believed, did not require in the circumstances a finding that the defendant had made a timely withdrawal from the criminal enterprise before the fatal shooting occurred. [531–532]

INDICTMENT found and returned on November 8, 1963.

The case was tried in the Superior Court before *Taveira*, J.

*Helen Mejan* for the defendant.

*Angelo Morello*, Assistant District Attorney (*Paul F. Cavanaugh*, Legal Assistant to the District Attorney, with him), for the Commonwealth.

KIRK, J. At the trial of the defendant on an indictment charging him with murder in the first degree the jury returned a verdict of guilty with a recommendation that the death penalty not be imposed. G. L. c. 265, § 2. All proceedings were subject to G. L. c. 278, §§ 33A–33G, inclusive. The case is before us on the defendant's appeal which is accompanied by a summary of the record, a transcript of the evidence and the assignments of error. The only assignment of error relied upon and argued before us is the denial of the defendant's motion for a directed verdict of not guilty of murder in the first degree.[1]

The question presented is whether the evidence in the case supported the verdict of murder in the first degree. Some facts are not in dispute. The defendant admits that about noon on November 6, 1963, he, in concert with one Yasaian, now deceased,[2] both armed with guns, assaulted with intent to rob certain persons in a jewelry store located on the floor above the street level in the Dexter Building, 453 Washington Street, Boston. It is not disputed that Yasaian, in circumstances later to be narrated, shot and killed George J. Holmes, a Boston police detective in plain clothes. It is not disputed that the killing of Holmes by Yasaian was murder.

---

[1] At the same trial the defendant was found guilty of the following crimes arising from the events of November 6, 1963; conspiracy to rob, carrying a firearm without a license, assault by means of a dangerous weapon, assault and battery and assault with intent to rob while armed.

[2] Yasaian took his own life on November 11, 1963, while still at large.

The evidence, which included testimony by the defendant, tended to show the following. The defendant and Yasaian had known each other for about six years. They had been "partners" in "deals" before. The defendant expected to share in the "loot of this deal." By pre-arrangement the defendant and Yasaian met at a restaurant on Charles Street, Boston, about 10:30 A.M. on November 6, 1963, where they talked. When they left the restaurant each had a seaman's knitted watch cap and a nylon stocking. Both were armed. The defendant had two automatic pistols of different calibers. The smaller of the two weapons was concealed in his underwear. Both weapons were fully loaded, i.e., there were seven bullets in the magazine and one bullet in the firing chamber of each weapon. Yasaian had an automatic pistol which was similarly loaded. The defendant, in addition, had on his person a box containing forty-two bullets. The defendant knew that all weapons were fully loaded, capable of firing, and ready to fire.

The two men walked from the restaurant to the Dexter Building where they arrived around noontime. They went up the stairs and, when at the top, drew the nylon stockings over their heads, put on the watch caps, and then, with drawn guns, entered the jewelry store. Yasaian went to the left toward a counter where some customers and employees were standing and said, "This is a holdup, stand still everybody." Simultaneously the defendant, crouching down to avoid observation through the window by people in a department store across the street, proceeded directly to the diamond room where an employee and a customer were talking. He ordered them to leave the room, saying, "I'll blow your brains out."

In the meantime, Officer McGrail of the Boston police was directing traffic at the intersection of Washington and Summer streets. He was talking with Detective George J. Holmes. McGrail saw Sergeant Chennette coming along Washington Street in a patrol car.

The alarm in the jewelry store sounded.

Dellelo, still in a crouched position in the diamond room,

jumped up and yelled, "It's gone off, let's beat it."[3]   Both men dashed for the stairs, Dellelo in the lead, removing the nylon stocking and cap as he ran.   When he reached the door leading out of the building, he ran into Officer McGrail who had responded to the alarm.   Dellelo poked a gun into McGrail's stomach, then drew back and kicked him in the groin.   He ran along Washington Street in a northerly direction, turned left on Winter Street, and ran as fast as he could up Winter Street, pointing the gun at the crowd to make them move out of his way.   He was pursued by Sergeant Chennette and Officer McGrail.

Yasaian ran from the building, turned in a southerly direction on Washington Street and encountered Holmes at a point thirty-four feet from the doorway of the Dexter Building.   Holmes, who had a shopping bag in one hand and nothing in the other, raised his arms to shoulder level and said, "Stop."   Yasaian stopped "for a split second," looked at Holmes, drew his gun from his jacket, took direct aim at Holmes and shot him.   He shot him twice more.   He pushed Holmes who fell bleeding to the street.   Yasaian then resumed his run in a southerly direction on Washington Street and disappeared in the crowd.

Sergeant Chennette and Officer McGrail captured the defendant at gunpoint at the intersection of Winter and Tremont streets, where after having been tripped by a bystander, he had entered a cab and "put the gun to the side of . . . [the driver's] face."   The defendant and the pursuing officers heard the sound of three shots as they ran up Winter Street.

The autopsy disclosed that Detective Holmes died from a gunshot wound of the chest, with massive internal bleeding. There were also two entrance wounds in the back of his left shoulder.

The defendant contends that on the foregoing evidence he was entitled to a directed verdict of not guilty of first

---

[3] There were minor variations in the testimony of witnesses as to the words used by the defendant.   The defendant's own testimony as to the words he used is discussed later in this opinion.

degree murder. As already noted he concedes that the killing of Holmes by Yasaian was murder. He could scarcely do otherwise on any theory of law in the light of the discussion and holding in *Commonwealth* v. *Lussier,* 333 Mass. 83, 92–93. He expressly concedes that he and Yasaian were engaged in the attempted commission of a crime punishable with imprisonment for life. G. L. c. 265, §§ 1, 21. The defendant argues that it was error to deny his motion for a directed verdict because at the time the shooting of Holmes took place, the crime of attempted robbery, which was punishable with life imprisonment, was completely over, and because the defendant had already withdrawn from the criminal enterprise.

We consider the first of these contentions. Whether the attempted crime was completely over, so as to make inapplicable the third clause of G. L. c. 265, § 1,[4] is a question of fact, to be looked at objectively, and its beginning and end are marked by what is done, rather than what is thought. *Commonwealth* v. *Green,* 302 Mass. 547, 555. The jury, viewing the events objectively, could reasonably conclude that the two men broke off the undertaking upon the sounding of the alarm, not because they did not wish to proceed with it, but because they knew that if they persisted in it they faced imminent capture; that both had a common purpose to resist capture, whether with the expected loot or without it, and that resort to shooting was likely as a means to accomplish that common purpose. An attempted robbery is not ended merely because one or both of the robbers cease to desire to proceed, has in mind only a purpose to escape, and shoots in furtherance of that purpose. There must be an appreciable interval between the alleged termination and the fatal shooting. *Commonwealth* v. *Green,* 302 Mass. 547, 555. Even though the attempted or accomplished crime of robbery may technically be said to be complete, if the homicide is committed while the killer

---

[4] "Murder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree."

is engaged in one of the elements incident to the crime such as an escape or flight, the killing is referable to the robbery; and whether the act of escape or flight is a continuous part of the attempted or accomplished crime is for the jury to determine. *Commonwealth* v. *Lawrence*, 282 Pa. 128, 132. *Commonwealth* v. *Doris*, 287 Pa. 547. Here the jury could find that, from the moment the criminals entered the jewelry shop for the purpose of robbery to the moment of the defendant's capture, the defendant was continuously engaged in violence or threats of violence involving the use of a loaded pistol, that both his and Yasaian's acts were referable to the attempted robbery, and that their acts provided mutual support throughout. The assault upon Officer McGrail facilitated the escape of Yasaian as well as of the defendant. The fatal shooting of Detective Holmes by Yasaian followed immediately. The fact that the defendant and Yasaian ran in different directions upon leaving the Dexter Building could be found to be concerted action, designed to cause dispersion of the police in pursuit. These acts, all in rapid sequence, could be found to be parts of a single brief transaction. See *Commonwealth* v. *Snyder*, 282 Mass. 401, 421.

The defendant argues further that, since the shooting of Holmes did not occur on the premises where the attempted robbery took place, as it did in *Commonwealth* v. *Green*, 302 Mass. 547, and *Commonwealth* v. *Lussier*, 333 Mass. 83 (where the convictions were upheld), but rather took place on a public street, as in *People* v. *Marwig*, 227 N. Y. 382, 385–386 (where the conviction was reversed), he was entitled to a directed verdict. We do not agree. The fact that the killing in a given case does not take place on the premises of the original attempted or accomplished crime may be important in determining whether there was an appreciable interval between the alleged termination of the original crime and the inflicting of the mortal wound. It is not, however, decisive of that issue. The interval must show a detachment from the enterprise before the shooting. See *Commonwealth* v. *Green*, 302 Mass. 547, 555. The in-

terval between the alarm and the shooting of Holmes shows no detachment from the enterprise. It was characterized by violence in order that both men could get to the public streets where indeed, as was probable, the violence continued. Neither the elements of time or distance, involved here, require, as the defendant argues, the conclusion that the common criminal enterprise had come to an end before the shooting took place. The law and the evidence bring the case within the elementary proposition that, "If a person combines and confederates with others to accomplish an illegal purpose, he is criminally liable for the acts of each and all who participate with him in the execution of the unlawful design. . . . [I]t was not essential that murder be a part of the original plan, if it was one of the probable consequences of the robbery which was intended to be effected by the use of a deadly weapon." *Commonwealth* v. *Lussier,* 333 Mass. 83, 94, citing *Commonwealth* v. *Devereaux,* 256 Mass. 387, 395. *Commonwealth* v. *Devlin,* 335 Mass. 555. Our conclusion is that the jury could reasonably find that the crime jointly undertaken by the defendant and Yasaian involved murder as a probable consequence and was not in fact completely over when Yasaian shot Detective Holmes, with the result that the defendant is criminally responsible for the shooting.

The remaining contentions of the defendant are based upon his own testimony and require only brief discussion. The defendant testified that before he entered the store he had said to Yasaian, "Hey, wait a minute, I don't want any shooting. I don't want to get involved in no shooting," and that upon the sounding of the alarm, he had yelled, "I . . . [don't] want any part of this action, I am bailing out." For one thing the jury were free to disbelieve that the defendant made either of the statements. For another, as to the first alleged statement the law is clear that "it is no defence for . . . associates engaged with others in the commission of a robbery, that they did not intend to take life in its perpetration, or that they forbade their companions to kill." *Commonwealth* v. *Devereaux,* 256 Mass.

387, 392. The second alleged statement, if made, raised questions of fact whether the statement showed a determination by the defendant to go no further with the whole criminal enterprise and also whether it effectively communicated that determination to Yasaian in sufficient time to permit Yasaian likewise to abandon the undertaking before the shooting of Holmes took place. *Commonwealth* v. *Snyder*, 282 Mass. 401, 420. *People* v. *Nichols*, 230 N. Y. 221, 228–229. It is sufficient to say that, from the stated evidence, the conduct of both the defendant and Yasaian following the defendant's words falls far short of requiring a finding that the defendant had made a timely withdrawal from the criminal enterprise.

The motion for a directed verdict was properly denied.

*Judgment affirmed.*