COMMONWEALTH *vs.* WILLIAM KERR.

Middlesex. November 7, 1990. - January 30, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Extortion. Threatening. Arrest. Police,* Unlawful arrest. *Statute,* Construction. *Words,* "Authority."

In the circumstances of a criminal case in which the defendant, a police officer charged with attempted extortion under G. L. c. 265, § 25, did not have "vested in him" the power to make the arrest he had threatened, the defendant's motion for a required finding should have been allowed. [286-287]. ABRAMS, J., with whom O'CONNOR & GREANEY, JJ., joined, dissenting.

INDICTMENT found and returned in the Superior Court Department on March 22, 1988.

The case was heard by *Guy Volterra,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frank J. McGee* for the defendant.

*Richard D. Grundy,* Assistant District Attorney (*Catherine E. Sullivan,* Assistant District Attorney, with him) for the Commonwealth.

NOLAN, J. On September 1, 1988, the defendant, formerly a police officer with the Malden police department, was found guilty of violating G. L. c. 265, § 25 (1988 ed.), when he "did, as a police officer, verbally, maliciously and unlawfully use or threaten to use against James J. Sullivan, the power [or] authority vested in him, with the intent to compel Mr. Sullivan to do any act against his will." At the close of all of the evidence the defendant moved for a required finding of not guilty. The motion was denied. The defendant then appealed. In December of 1988, this court decided a trilogy of cases involving the interpretation of art. 12 of the Massa-

chusetts Declaration of Rights.[1] The defendant thereafter filed a motion for a new trial based on these decisions, which was also denied and the denial was appealed. The two appeals were consolidated by this court. We conclude that the defendant's motion for a required finding of not guilty should have been granted based on the insufficiency of the evidence. Having come to this conclusion, we need not address the defendant's claim based on transactional immunity.

The events which led to the defendant's conviction occurred on July 24, 1987. On that date, Kerr, a sergeant and a nineteen-year veteran with the Malden police force, was working a paid detail. Kerr, in addition to his duties as a police officer, was privately employed by the Malden Trust Company to repossess motor vehicles.

At about noon on July 24, 1987, Kerr left his paid detail and drove his cruiser to a restaurant in Stoneham to repossess an automobile for the Malden Trust Company. Kerr was in full uniform. He entered the restaurant and asked the owner, James Sullivan to speak with him outside. Once outside the restaurant, Kerr apparently told Sullivan that he had a warrant for Sullivan's arrest for concealing mortgaged property, namely the automobile. It is undisputed that Kerr had no warrant. Kerr demanded the keys to Sullivan's automobile. Sullivan's wife turned over the keys on hearing from her husband that Kerr had a warrant and that Sullivan would be arrested if she did not give Kerr the keys.

Kerr then went to a taxi cab company next door to the restaurant, identified himself as a Malden police officer, and asked for a driver to transport the repossessed vehicle to Malden. Kerr led the driver to Kerr's home in Malden, left the automobile there, and drove the driver back to Stoneham. Kerr never paid the driver for his services and had stated to him that he was repossessing an automobile for a bank.

---

[1]*Carney* v. *Springfield*, 403 Mass. 604 (1988). *Doe* v. *Springfield*, 403 Mass. 1010 (1988). *Springfield* v. *Civil Serv. Comm'n*, 403 Mass. 612 (1988).

The defendant was thereafter indicted and convicted of attempted extortion under G. L. c. 265, § 25, based on evidence independent of the police department's internal investigation. The defendant argues that his motion for a required finding of not guilty should have been allowed because an essential element of the crime, i.e., that an officer used or threaten to use "the power or authority vested in him" is not present because he did not in fact have the power to carry out the arrest threat that he made. There was evidence to support the finding that Kerr threatened Sullivan with arrest stating that he had a warrant. Kerr did not in fact have a warrant and did not have the power to arrest. Since the arrest power was not "vested in him" at that time, Kerr argues he is not guilty of violating this statute. We agree.

It is a well-established proposition that criminal statutes are to be construed narrowly. We have stated that "[w]e must resolve in favor of criminal defendants any reasonable doubt as to [a] statute's meaning." *Commonwealth* v. *Connolly*, 394 Mass. 169, 174 (1985). The defendant was convicted of violating G. L. c. 265, § 25, which states in pertinent part that "any police officer . . . who verbally or by written or printed communication maliciously and unlawfully uses or threatens to use against another the power or authority *vested in him*, with intent . . . to compel any person to do any act against his will, shall be punished" (emphasis added). The statute is clear on its face that an officer must threaten to use a power or authority that is actually vested in him, a threat that he actually has the power to carry out. If the officer does not in fact have the power which he threatens to use, then under the plain meaning of the statute, he is not guilty of a violation.

Given this starting point, the question becomes whether Kerr had the power to arrest Sullivan on the day he threatened to arrest him. When executing an arrest warrant, a police officer's powers are State-wide. *Commonwealth* v. *Martin*, 98 Mass. 4 (1867). However, when a police officer does not have a valid warrant, the power to arrest is limited to the governmental unit to which he has been appointed.

*Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986). There are two situations in which an officer may make a valid warrantless arrest even outside his jurisdiction. First, an officer has the right to make an extraterritorial arrest when he is "on fresh and continued pursuit" of a suspected felon. G. L. c. 41, § 98A (1988 ed.). Second, an officer has the power to arrest without a warrant in another territory when he has been specially sworn in as a police officer in that neighboring territory. G. L. c. 41, § 99 (1988 ed.).

When a police officer makes a warrantless arrest outside his territory and neither of the two exceptions exists, he acts only with the authority he would have as a private citizen. *Commonwealth* v. *Grise, supra* at 251. In Massachusetts, a private citizen has the power to arrest a person who has in fact committed a felony. *Commonwealth* v. *Lussier*, 333 Mass. 83, 92 (1955). In this case, the crime for which Kerr told Sullivan he had an arrest warrant was a misdemeanor.[2] A private citizen would not have had the power to arrest Sullivan and, therefore, neither would Kerr. *Commonwealth* v. *Grise, supra* at 251 (a private person's power to arrest is limited to felonies).

Kerr did not have a warrant for Sullivan's arrest as he alleged. He therefore did not have the power to arrest because he, a Malden police officer, was in Stoneham, outside his jurisdiction. There was no evidence of fresh pursuit of a suspected felon or that Kerr was specially sworn in to make arrests in Stoneham. He did not have the power, even as a private citizen, to make an arrest. The statute is clear that, for a violation, an officer must threaten a person with a power or authority *vested* in the officer. The statute is penal and therefore must be construed narrowly. No arrest power was vested in Kerr at the time of the threat. Accordingly, he should have been found not guilty.

The Legislature may want to consider amending G. L. c. 265, § 25, to make it punishable for a police officer with

---

[2]Sullivan was accused of concealing mortgaged property in violation of G. L. c. 266, § 82 (1988 ed.).

*apparent authority*, as here, to commit these reprehensible acts.

*Judgment reversed.*

*Finding set aside.*

ABRAMS, J. (dissenting, with whom O'Connor and Greaney, JJ., join). General Laws c. 265, § 25, punishes "any police officer or person having the powers of a police officer . . . who verbally or by written communication maliciously and unlawfully uses or threatens to use against another the *power or authority* vested in him . . . with intent to compel any person to do any act against his will" (emphasis added). Instead of merely prohibiting abuse of a police officer's vested power, the Legislature specifically chose to target the abuse of his or her power *or authority*. A fundamental principle of statutory construction is that "[w]herever possible, we give meaning to each word in the legislation; no word in a statute should be considered superfluous." *International Org. of Masters* v. *Wood's Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984). Furthermore, "the word 'or' in its ordinary use and also in accurate meaning is a disjunctive particle. It marks an alternative and not a conjunctive. It indicates one or the other of two or several persons, things or situations and not a combination of them." *Gaynor's Case*, 217 Mass. 86, 90 (1914). The court fails to consider the distinction between power and authority, or neglects to follow our rule of interpretation. The Legislature generally does not include superfluous language in a statute.

Webster's New Int'l Dictionary (2d ed. 1957) provides four definitions of "authority," two of which are relevant to c. 265, § 25. The first definition is "[l]egal or rightful power, a right to command or to act; power exercised by a person in virtue of his office or trust; dominion; jurisdiction; authorization." *Id.* at 186. This definition is basically synonymous with the court's definition of power. Authority, in this sense,

means *actual* authority, or a legal right to act. The second relevant definition is "[p]ower derived from opinion, respect or esteem; influence of character, office, or station, or mental or moral superiority, and the like; claim to be believed or obeyed." *Id.* Unlike the first definition, this second meaning of "authority" does not depend on an actual right to act; it is derived instead from a claim to have a right to act, or from the respect or esteem conferred by others. The extent of this kind of authority is not determined by law, it is determined by the willingness of others to believe or to obey the one claiming the authority.

I can discern no plausible distinction between the first definition of authority, and the meaning of the word "power" as used by the court.[1] Because we do not assume that the Legislature used superfluous language, it seems obvious that the Legislature must have intended the second definition of authority. I conclude that the "power" referred to in the statute means actual, de jure power, while "authority" means both actual and apparent authority.[2]

---

[1] The court asserts that "[t]he statute is clear on its face that an officer must threaten to use a power or authority that is actually vested in him, a threat that he actually has the power to carry out. If the officer does not in fact have the power which he threatens to use, then under the plain meaning of the statute, he is not guilty of a violation." *Ante* at 286.

[2] The fact that the statute requires the power or authority to be "vested" does not detract from this conclusion. The verb "to vest," according to Webster's, means "[t]o clothe (with authority, power, or the like)." Webster's New Collegiate Dictionary 948 (2d ed. 1953). A police officer certainly can be "clothed" with apparent authority even though he or she may not actually possess a de jure power. The authority may be vested or clothed by virtue of a badge or uniform, see G. L. c. 41, § 98 (police officers may carry authorized weapons within the Commonwealth); c. 41, § 98C (police officers required to wear badge, tag or label with identification number or name), and the public is required to defer to that authority, see G. L. c. 90, § 21 (police officer authorized to make an arrest may arrest motor vehicle operators whose licenses have been revoked provided that officer is in uniform or displaying badge); G. L. c. 90, § 25 (any person who refuses to stop automobile when signalled by a police officer in uniform or conspicuously displaying badge shall be punished); G. L. c. 89, § 7A (no person may obstruct police vehicles or vehicles bearing official police department designation at or on the way to a fire); G. L. c. 89, § 7B (police vehicle responding to emergency may drive in excess of speed

That the Legislature intended a distinction between power and authority is evident from an examination of the rest of the provision. The statute applies to "any police officer or person having the powers of a police officer." In this clause, the Legislature chose to use only the word "power," omitting any reference to "authority." Therefore, the natural reading of this provision is that it applies to persons with the actual power of a police officer — such as certain university security personnel — but it does not apply to persons with only apparent authority — such as civilians unlawfully in an officer's uniform. Rather than lumping a single concept into the phrase "power or authority," the Legislature assigned a distinct meaning to each word, and used both words when it intended a broader meaning and only one of them when it wanted to narrow the scope.

At common law, "it is extortion . . . to receive, by colour of office, a fee before it is due." *Commonwealth* v. *Bagley*, 7 Pick. 279, 281 (1828). We have long recognized that "a statute should not be interpreted as being at odds with the common law 'unless the intent to alter it is clearly expressed.' " *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), quoting *Commonwealth* v. *Knapp*, 9 Pick. 495, 514 (1830). Here, the fair and natural interpretation of the phrase "power or authority" in G. L. c. 265, § 25, is in accordance with the common law term "by color of office." Only by ignoring the statutory language is the court able to narrow the statute from its common law origins. In the absence of any clear evidence that the Legislature intended such a break with the common law, I would not infer such a change. See *Adler* v. *Sheriff, Clark County*, 92 Nev. 641, 643 (1976) (statute punishing a public officer who demands compensation "for his official service" interpreted to encompass a demand

---

limit). Indeed, in some cases, we require submission to a police officer's apparent authority even if he or she does not possess actual power. See *Commonwealth* v. *Moreira*, 388 Mass. 596 (1983) (a person must submit to an arrest accomplished without excessive force by a police officer even if the arrest is unlawful). Therefore, it is clear that police may be vested with apparent authority as well as actual power.

"under color of office" because of no apparent legislative intent to alter common law definition).

I interpret G. L. c. 265, § 25, to prohibit police officers from using or threatening to use the actual power or apparent authority vested in them to compel any person to act against his or her will. Thus, Kerr's conviction should stand. The authority that Kerr exerted over Sullivan was not derived from a legally conferred power; it was derived from the authority of the uniform and the badge as well as the respect most citizens confer on a police officer. It was reasonable for Sullivan to believe that Kerr had the authority to arrest him if he did not obey Kerr's commands. Because there was sufficient evidence from which the judge could have found that Kerr threatened to use his police (apparent) authority against Sullivan if the latter did not turn over his keys, I would affirm the conviction and the Superior Court judge's denial of the motion for a required finding of not guilty.