COMMONWEALTH vs. RICHARD BOYAJIAN.

Middlesex.    March 5, 1962. — April 2, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Homicide.   Evidence,* Res gestae, Judicial discretion.   *Practice, Criminal,*
    Exceptions: whether error harmful; Requests, rulings and instructions.
    *Error,* Whether error harmful.

At a trial for second degree murder of one killed by the defendant in a
    fight occurring in the course of an affair in which he and several others
    participated, there was no abuse of discretion on the part of the judge
    in the admission in evidence of a conversation had by a witness with
    some of the other participants at the scene of the fight while it was in
    progress and just before the witness himself was struck.   [47]
Evidence at a criminal trial of the defendant's crying at a police station
    was not harmful to the defendant in view of previous testimony of his
    crying admitted without objection.   [47–48]
At the trial of an indictment for murder in the second degree, a finding
    of guilty was warranted by evidence of the circumstances in which, after
    the defendant with others had decided to "beat up" the "fellow who
    beat up" a friend of the defendant the previous evening and had gone
    to a variety store, a fight ensued there during which the victim was
    killed by contact with a knife held by the defendant.   [48–49]
There was no error on the part of a judge hearing a criminal case without
    jury, in which the evidence warranted a finding of guilty, in the denial
    of requests for rulings by the defendant on the ground that "even if
    abstractly correct, they are not applicable to the facts found."   [49]

INDICTMENT found and returned on March 31, 1960.

The case was heard in the Superior Court by *Bolster,* J.

*Joseph G. Crane,* for the defendant.

*Ruth I. Abrams,* Assistant District Attorney, for the
Commonwealth.

SPIEGEL, J.   This is an appeal under the provisions of
G. L. c. 278, § 33B, as amended through St. 1955, c. 352, § 1,
from a conviction of murder in the second degree.   The de-
fendant, having waived a trial by jury, was tried before a
judge on two indictments.   In one he was charged with
murder in the second degree.   The other was for con-
spiracy with eight other codefendants to commit an assault

and battery upon a person unknown. The record does not include the indictment for conspiracy and no argument is made concerning the conviction on that indictment. The transcript of evidence includes all the evidence introduced at the trial on both indictments.

There are eleven assignments of error. The first three are based on exceptions to the admission of testimony and the remaining eight to the denial of certain of the defendant's requests for rulings.

There was evidence that a friend of the defendant, one Vincent Andrews, who lived in Watertown, had been beaten in a fight in Arlington on March 20, 1960. The defendant and a group of others decided to go to Arlington to "beat up" the "fellow who beat up Andrews." On the following evening, the defendant and eight others drove in two cars to Bruno's Variety Store in Arlington. The defendant was wearing his work clothes, in the pocket of which was a knife that he used in the course of his employment in a produce packing company. He also had a baseball bat with him which he had taken from his cellar that evening.

The defendant and several of his companions entered the store. He noticed two girls and a boy with a broom in his hand. The deceased, Frank Theall, came from the rear of the store and asked the boys what they wanted there. Theall told them to get out and grabbed one of the boys. The boys then "pushed him [Theall] out the door." A fight began between Theall and two of the defendant's companions. One of the boys was knocked down and when he got up there was blood on his arm. All the boys started to leave. "They were heading towards the parking lot." Theall grabbed another of the boys but the boy "wrenched away."

Theall started coming toward the defendant. The defendant pulled the knife out of his pocket, opened it and "waved it back and forth, slashing." The defendant testified that he told Theall, " 'Keep away from me or I'll have to use it.' Then I stopped and I just held it out, and he came at me. He lunged at me, and before I could pull it back, I felt it go into him."

On cross-examination the defendant testified that he held his arm out with the knife in his hand, the blade pointed forward and Theall jumped chest first into the blade of his knife. After the fight while returning to Watertown in the car, the defendant said to his companions that he thought he might have stabbed Theall.

Upon completion of the defendant's cross-examination, the judge asked the defendant the following question: "When you and Mr. Theall were out there in the street, were there any of the other boys immediately behind you?" The defendant answered, "No, I don't think so." The judge then asked, "Did you ever turn around and run any distance away from him?" The defendant answered, "I tried to get around him to — I didn't run back but I tried to get around his left, I think it was, to get to the parking lot."

One John Mankiewicz, a police sergeant in the town of Watertown, testified as follows: On the night of March 21, 1960, he was on duty in a police car and, as a result of a "radio call," stopped a Ford automobile. There were four occupants in the car including the defendant. They were ordered out of the car, given a "pat search, so called," handcuffed, and taken to the police station. At the station, in the presence of another officer, Mankiewicz made a thorough search of the defendant, and took off both his shoes. He "lifted up and emptied the shoes" and a knife fell out onto the floor. The defendant admitted it was his knife. Mankiewicz asked him about some stains on the knife and he replied that he had scratched himself on his left hand. Mankiewicz looked at the defendant's wrist and noticed a slight scratch.

Richard H. Keefe, a lieutenant in the Watertown police department, testified that on the night of March 21, 1960, as a result of a telephone call to his home, he went to the Watertown police station. There he saw the defendant, two other boys, and several police officers. He saw a knife on the floor beside the defendant. He picked up the knife, opened the blade and "saw brown stains on the blade."

Cornelius J. Crowley, detective-lieutenant, inspector, of

Massachusetts State Police, testified in pertinent part as follows. On March 21, 1960, he went to the Arlington police station and there talked with the defendant. The defendant told him that a number of boys were fighting with Theall; that the defendant took out his knife and slashed it around in front of Theall; that, "while they were fighting, they got tangled up together and he [the defendant] felt the knife go into the man."

1. The defendant, by his first assignment of error, contends that the admission of testimony of one Joseph Baxter as to his conversation with some of the codefendants was error. Baxter testified that he was in the store when the defendant and the other boys entered; that he followed Theall and the boys out of the store; that he was stopped by three of the boys at a point about thirty to thirty-five feet away from Theall; and that a conversation with the three boys ensued. He was then asked, "Would you tell us what the conversation was?" The defendant objected and the witness was permitted to testify, subject to the defendant's exception, as follows: "I said 'Kind of uneven, isn't it?' and then one of the boys replied back to me 'What about yesterday? You guys put one of our boys in the hospital with,' I believe he said, 'six stitches.' " Then the witness was struck in the head by one of the boys.

We perceive no abuse of discretion in the admission of this testimony. The defendant was being tried for conspiracy as well as murder in the second degree. The declarations were made at the scene of the fight while the fight was in progress and just before the witness himself was struck. They were sufficiently spontaneous to negative contrivance "or possible fabrication, and tended to qualify, characterize and explain" the events. *Correira* v. *Boston Motor Tours, Inc.* 270 Mass. 88, 91. *Rocco* v. *Boston-Leader, Inc.* 340 Mass. 195, 196, 197.

2. The defendant's second and third assignments of error have to do with the testimony of one Bradley, a police officer in the town of Arlington. The witness testified that he observed the defendant after the defendant had been

interrogated at the Arlington police station; that the defendant was sitting in a chair with "his head in his arms on a table"; that he was crying; and that his eyes were red. This testimony may not have been particularly pertinent, but we do not believe the defendant was harmed by its admission especially since previous testimony that the defendant had been crying was admitted without objection.

3. The defendant contends that the judge's denial of requests for rulings numbered 7 and 8 (assignments of error 4 and 5) on the ground that they were requests for findings of fact was error. Requests numbered 7 and 8 are as follows: "7. On all the evidence, it cannot be found that the Homicide was committed in furtherance or in the prosecution of the common object and design of the alleged conspiracy. . . . 8. On all the evidence, the Homicide was not the natural or necessary consequences of the alleged enterprise or conspiracy." Each request cited *Commonwealth* v. *Campbell,* 7 Allen, 541.

The defendant argues in effect that a request for a ruling "on all the evidence" is a request for a ruling of law as to whether there was sufficient evidence to warrant a finding of guilty. The defendant cites the cases of *Forbes* v. *Gordon & Gerber, Inc.* 298 Mass. 91, and *Commonwealth* v. *Carter,* 306 Mass. 141, which establish the rule that in cases tried in the Superior Court, without a jury, the question whether the evidence is sufficient to warrant a finding against a party is to be raised by a request for a ruling that the evidence would not warrant such a finding. See *Commonwealth* v. *Goldberg,* 316 Mass. 563, 564; *Commonwealth* v. *Slome,* 321 Mass. 713, 714.

Assuming the requests raised the question of sufficiency of the evidence to warrant a finding of guilty, there was no error in the denial of such requests. Under G. L. c. 265, § 1, "Murder which does not appear to be in the first degree is murder in the second degree." It has been judicially defined as an "unlawful killing with malice aforethought." *Commonwealth* v. *Bedrosian,* 247 Mass. 573, 576. "Malice" as it is used in this definition includes

"every . . . unlawful and unjustifiable motive" and is "implied from any deliberate or cruel act against another." *Commonwealth* v. *Webster,* 5 Cush. 295, 304. *Commonwealth* v. *Lussier,* 333 Mass. 83, 92.

We have examined the complete transcript and are of opinion that there was ample evidence to warrant a finding of guilty. See *Commonwealth* v. *Beaulieu,* 333 Mass. 640, 647–648, cert. den. sub nom. *Boisvert* v. *Massachusetts,* 352 U. S. 857.

4.   The judge denied certain of the defendant's requests for rulings (assignments 6, 9, 10, and 11) on the ground that "even if abstractly correct, they are not applicable to the facts found." The granting of other requests indicates that the judge was not misinformed as to the law. In view of our determination that the evidence warranted a finding of guilty, "none of the rulings deemed inapplicable can be said to have been required as matter of law. There was no error in the disposal of the requests." *Commonwealth* v. *Gordon,* 340 Mass. 754, 756.

5.   Assignments 7 and 8 have not been argued by the defendant and are deemed waived. *Commonwealth* v. *Taylor,* 327 Mass. 641, 646.

*Judgment affirmed.*