COMMONWEALTH *vs.* RICHARD E. CHASE.

Essex.    April 5, 1966. — June 3, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Criminal,* Guarding of defendant in court room; Assistance of counsel; Exceptions: whether error harmful; Plea. *Pleading, Criminal,* Indictment. *Evidence,* Admissions and confessions, Prior indictment, Plea, Relevancy and materiality. *Constitutional Law,* Assistance of counsel. *Error,* Whether error harmful. *Homicide.*

At the trial of an indictment for second degree murder against a defendant who, to the knowledge of the judge, had twice attempted to escape, there was no abuse of the judge's discretion in ordering that the defendant remain manacled during the trial.   [739–740]

There was no merit in a contention that an indictment for murder charging, in the language of G. L. c. 277, § 79, that the defendant was "guilty of murder in the second degree and not in the first degree" should be quashed on the ground that the presence of the word guilty therein deprived the defendant of the presumption of innocence.   [740]

A document containing a confession of murder by a fifteen year old boy recorded in the presence of his parents and others was not inadmissible at his trial on that charge on the ground that the confession was coerced where it appeared, on the contrary, that it had been obtained only through proper conduct by the police and with scrupulous regard by them for the boy's rights; nor, in the circumstances, was the confession made inadmissible by *Escobedo* v. *Illinois,* 378 U. S. 478, or by the fact that the boy was not formally arraigned until after giving the confession.   [740–742]

Error, if any, in the admission of a confession by the defendant at a criminal trial was harmless where he, with full knowledge of the significance of what he was doing, took the stand and in his testimony corroborated his confession in all material aspects.   [742]

At the trial of an indictment for murder in the second degree based on a certain homicide, it was competent for the Commonwealth to show that previously the defendant, as a boy fifteen years of age, had been indicted for first degree murder on the basis of the same homicide and on such earlier indictment had pleaded guilty to murder in the second degree, although under G. L. c. 119, §§ 61, 74, the Superior Court in the circumstances had had no jurisdiction to sentence him for murder in the second degree on the earlier indictment and his guilt of that crime had not been conclusively established by his plea thereon; and there was no error in instructions to the jury that they might regard the plea as an admission of "serious juvenile conduct" permitting an inference of "malice aforethought."   [743, 744–745]

An indictment for armed robbery and the defendant's plea thereto were admissible in evidence at the subsequent trial of an indictment of the same defendant for murder in the second degree based on a homicide occurring during such robbery. [743–744]

There was no merit in a contention, by the defendant in an indictment for murder in the second degree based on a homicide occurring during an armed robbery, that the felony-murder provision of G. L. c. 265, § 1, permits a conviction for first degree murder only and that he could not be convicted of second degree murder thereunder and was entitled to a directed verdict of not guilty. [744]

Certain instructions to the jury in a criminal case adequately left to them the question whether a confession was coerced or voluntary notwithstanding that they were told not to consider certain constitutional questions. [745]

INDICTMENT found and returned on September 14, 1962.

The case was tried in the Superior Court before *Brogna*, J.

*Walter J. Hurley* (*Bernard J. Dwyer* with him) for the defendant.

*John J. Jennings*, Assistant District Attorney, for the Commonwealth.

SPALDING, J. Under an indictment charging him with the murder in the second degree of Philip Kantrowitz, the defendant was found guilty. The case comes here by appeal under G. L. c. 278, §§ 33A–33G, with numerous assignments of error. A report relating to certain aspects of this and a prior indictment was before us in *Commonwealth* v. *Chase*, 348 Mass. 100.

The indictment arose out of the following events. On Thursday, January 12, 1956, Chase, who was then fifteen years old, together with Reginald F. Metcalf, aged thirteen, entered Kantrowitz's store in Newburyport with a rifle for the purpose of committing a robbery. They forced the victim to lie down on the floor and, while Chase was attempting to bind his hands, the rifle was discharged by Metcalf, killing Kantrowitz. Metcalf's case was considered by us in *Metcalf* v. *Commonwealth*, 338 Mass. 648.

1. The defendant contends that the judge abused his discretion in ordering that he be manacled during the trial. While it is desirable, where possible, to avoid the shackling

of a defendant during his trial (see *Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 16), a judge's refusal to order the removal of the shackles, where there exists any reasonable basis for anticipating that a prisoner may attempt to escape, will not be overruled. *Commonwealth* v. *Millen,* 289 Mass. 441, 477–478. *Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 16. Here, it appeared that the defendant had attempted to escape on two prior occasions, and this fact was brought to the attention of the judge. This, taken together with the serious nature of the crime for which the defendant was being tried, was sufficient to justify the action of the judge.

2. The defendant's second assignment relates to the denial of his motion to quash the indictment on the ground that it contained the words ''and the jurors further say that the defendant is guilty of murder in the second degree and not in the first degree.'' The presence of the word ''guilty'' in the quoted phrase, it is argued, deprived the defendant of his presumption of innocence. There is no merit in this contention. The phrase meant no more than that the defendant was charged with murder in the second degree. The indictment was in the form prescribed by statute when ''murder in the first degree is not alleged'' (G. L. c. 277, § 79), and has been in use in this Commonwealth for many years. See *Commonwealth* v. *Ibrahim,* 184 Mass. 255.

3. Assignments of error 3, 5 and 11 challenge the judge's denial of a motion to suppress a document recording a confession of the defendant, and his subsequent ruling admitting the document. It is contended that the circumstances under which the confession was obtained were so coercive as to render its use at the trial violative of the due process of law guaranteed by the Fourteenth Amendment of our Federal Constitution. The defendant relies on *Haley* v. *Ohio,* 332 U. S. 596. In that case the Supreme Court reversed the conviction for first degree murder of a fifteen year old boy, based upon incriminating statements drawn from him after intense grilling by relays of police for five

hours in the dead of night. During the interrogation, at the time of his confession, and for several days thereafter, the boy was held incommunicado.

There was conflicting evidence regarding the precise circumstances in which Chase was interrogated and in which he initially implicated himself. But in reviewing a trial judge's preliminary determination regarding the voluntary or involuntary nature of a confession, "only those . . . circumstances . . . unquestioned in the State's version of what happened are relevant to the constitutional issue." *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 586. The quoted language was taken from *Watts* v. *Indiana,* 338 U. S. 49, 51–52.

Chase and Metcalf were apprehended on the morning of January 13, 1956, and brought to police headquarters in Newburyport. There they were questioned by two State police officers, one of whom told Chase that "he didn't have to tell us anything, that it was a serious crime, that the man was dead." Chase admitted before noon that he had been present when the crime was committed, after which he reënacted, at the scene of the crime, what had taken place. At no time was he beaten, threatened, coerced, or promised special treatment in return for making a statement. He was permitted to see his parents around 1 P.M. About 8:30 P.M. on the same day, after he had spoken with his mother, Chase gave the statement of what had occurred in the presence of a stenographer, his mother, his father, the principal of his school and various State and local officers.

Considering similar objections to the admission of a defendant's incriminating statements in *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 584–589, we held that the circumstances in which those admissions were made fell short of the kind of coercion which may be said to render a statement involuntary and inadmissible. The facts surrounding Chase's confession reveal an even higher standard of behavior on the part of the officers in charge of his interrogation. There is no evidence of prolonged or intense grilling; Chase was seen by his parents prior to making his formal

statement; and the statement was made in the presence of persons who were clearly not hostile toward the defendant. In short, it would appear that the interrogation was conducted with scrupulous regard for his rights.

Nor do we perceive any violation of the defendant's rights as delineated by the Supreme Court in *Escobedo* v. *Illinois,* 378 U. S. 478, 490–491. Prior to Chase's apprehension by the police, his parents were made aware of his possible criminal involvement and they sought, though unsuccessfully, to retain counsel for him. There was, moreover, no evidence that while he was in custody counsel or anyone else sought and was refused access to the defendant.

The admissibility of the confession is not affected by the fact that Chase was not formally arraigned until the morning after his confession. The decision in *McNabb* v. *United States,* 318 U. S. 332, is not based on constitutional principles but on the supervisory powers of the Supreme Court over lower Federal courts. But even if the *McNabb* doctrine were applicable there was here no evidence of the sort of conduct on the part of the police which was before the court in that case.

We might add that the question of the legality of Chase's confession was rendered academic when he took the stand at the trial, with full knowledge of the significance of what he was doing, and corroborated every material element contained therein.[1] Thus, had there been error in admitting the confession, this testimony removes conclusively the possibility "that the evidence complained of might have contributed to the conviction." *Fahy* v. *Connecticut,* 375 U. S. 85, 86–87. *Commonwealth* v. *McNeil,* 328 Mass. 436, 438–439.

4. The defendant takes nothing by his fourth and twelfth assignments. These challenge the admissibility of the document containing the confession on the ground that it

---

[1] When the defendant took the stand to testify he stated, in response to questions put by the judge, that he was aware that he did not have to testify and that if he chose not to do so no adverse inference could be drawn by the jury; that he had been informed by his counsel that certain legal defences concerning his confession would be "waived or largely nullified"; and that the decision to testify was his own and was "for the purpose of seeing that the truth comes out."

was an incomplete record. There was evidence before the court, including testimony of the stenographer who recorded the statement, sufficient to warrant the conclusion that the statement, while not entirely a verbatim record, was a substantially complete account of all that occurred.

5. In his opening the district attorney was permitted to refer to the joint acts of the defendant and Reginald Metcalf, and to read a prior indictment of both boys for first degree murder.[2] Subsequently, this indictment and the boys' pleas of guilty to second decree murder were read in evidence. The defendant's exceptions to the opening and to the admission of the prior indictment and pleas are the subject of assignments 6, 7 and 9. He contends that since the present indictment charges only himself and not Metcalf with murder, evidence of Metcalf's prior indictment and plea were irrelevant. He argues further that the admission of such evidence, because it tended to prove the guilt of the person who fired the shot without affording Chase the right of confrontation, was prejudicial. The transcript reveals that the district attorney sought to introduce only Chase's plea to the prior indictment, and that it was at the insistence of counsel for the defendant that both pleas were read. Accordingly, any objection was waived. There is no question regarding the admissibility of the prior indictment and Chase's plea thereto in the light of *Commonwealth* v. *Chase,* 348 Mass. 100, 104, where we passed on the admissibility of the plea in a subsequent trial. Our decision there certainly contemplated that the indictment to which the plea was responsive would also be put in evidence, since otherwise the plea would be meaningless.

6. Assignment 10 relates to the admission in evidence of a prior indictment of Chase for armed robbery and his plea thereto. It is contended that this evidence is inadmissible because it tends to establish his commission of an independent crime. There is no merit to this argument since the armed robbery to which this plea was entered provided

---

[2] This indictment was involved in the proceedings set forth in *Commonwealth* v. *Chase,* 348 Mass. 100.

the very basis, under the felony-murder rule, for the present indictment. This evidence showed an admission of an unlawful act of the sort from which the malice aforethought necessary for a conviction of second degree murder could be inferred. See *Commonwealth* v. *Boyajian,* 344 Mass. 44, 48–49; *Commonwealth* v. *Chase,* 348 Mass. 100, 104; *Commonwealth* v. *Balliro,* 349 Mass. 505, 512.

7. The defendant alleges error in the denial of his motion for a directed verdict (assignments 13 and 14). We have answered in our discussion of assignments 3, 5 and 11 that part of his argument which refers to the allegedly illegal evidence (the confession) upon which the conviction was obtained. The defendant's other contention is that under G. L. c. 265, § 1, he could not be convicted of anything but first degree murder. Section 1 of c. 265, reads in part: "Murder committed . . . in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree." It is argued that where murder is charged under the felony-murder rule, as incorporated in this statute, the foregoing language permits a conviction for first degree murder only. This was not the situation under the common law (see *Commonwealth* v. *Green,* 302 Mass. 547, 556, and *Commonwealth* v. *Balliro, supra,* and cases cited), and we are not persuaded that the language in c. 265, § 1, was intended to limit the operation of the felony-murder rule to first degree murder. It has often been said that this statute does not create two separate and distinct crimes, but that the Legislature "considers murder as one kind or species of crime, the punishment of which may be more or less severe according to certain aggravating circumstances, which may appear on the trial." *Commonwealth* v. *DiStasio,* 298 Mass. 562, 564, and cases there cited.

8. Assignments 15 and 16 challenge the judge's charge to the jury in two respects. Exception was taken to that portion in which the judge instructed the jury that they might regard Chase's plea of guilty of second degree mur-

der to the earlier indictment as an admission of "serious juvenile conduct which might . . . allow you to infer that he had malice aforethought." This point was resolved in *Commonwealth* v. *Chase*, 348 Mass. 100, 104, where we said: "The plea to the first indictment (No. 46,181) was a formal confession in open court of conduct by a juvenile constituting very serious delinquency. As such it has evidential effect . . . on the issue of . . . second degree murder."

The defendant also excepted to the instruction that the jury were not to consider the constitutional questions whether the defendant had been informed of his right to remain silent and of his right to obtain counsel. The defendant contends that this instruction removed these factors from the jury's consideration of whether Chase's confession was voluntary or coerced. We do not agree. The question of the voluntariness of the confession was explicitly left to the jury, and they were told to consider "the age of the defendant [and] the circumstances surrounding the obtaining of the statement." A reading of the entire charge on the issue of the confession convinces us that there was no error.

*Judgment affirmed.*