NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13774


R.D. <u>vs</u>.  COMMONWEALTH.



Suffolk.     January 7, 2026. - May 21, 2026.

Present:  Budd, C.J., Gaziano, Wendlandt, Georges, Dewar,
& Wolohojian, JJ.


<u>Supreme Judicial Court</u>, Superintendence of inferior courts.  <u>Due
    Process of Law</u>, Substantive rights, Competency to stand
    trial, Pretrial detainees, Commitment.  <u>Practice, Criminal</u>,
    Competency to stand trial, Defendant's competency.  <u>Bail</u>.



<u>C</u><u>ivil action</u> commenced in the Supreme Judicial Court for
the county of Suffolk on April 2, 2025.

The case was heard by <u>Kafker</u>, J.


<u>Michaela R. Martin Strout</u>, Committee for Public Counsel
Services, for the petitioner.
<u>Kenneth E. Steinfield</u>, Assistant District Attorney, for the
Commonwealth.
<u>Tatum A. Pritchard, Justin M. Woolf, Deborah A. Dorfman,</u>
<u>Jennifer Honig, Steven Schwartz, & Kathryn Rucker</u>, for
Disability Law Center, Inc., & others, amici curiae, submitted a
brief.


GEORGES, J.  This is a companion case to <u>S.W.</u> v.

<u>Commonwealth</u>, 497 Mass.    (2026), also decided today.  The

defendant[1] filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking relief from two orders issued by a judge of the Boston Municipal Court. Specifically, the judge ordered the defendant's hospitalization for a competency evaluation (commitment order) pursuant to G. L. c. 123, § 15 (b) (§ 15 [b]), and her detention without bail pending that evaluation (detention order). Exercising his discretion to reach the merits of the petition, a single justice of this court allowed the petition in part, vacating the detention order while denying relief as to the commitment order. The defendant appealed. We affirm.[2]

Background. On March 31, 2025, the defendant was arrested and charged with assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (a). She was brought to the Roxbury Division of the Boston Municipal Court Department (BMC) for her initial appearance. After being informed by court officers that the defendant was acting "bizarrely" in lockup and refusing to enter the court room for

---

[1] Although this appeal stems from R.D.'s G. L. c. 211, § 3, petition in the county court, for ease of reference we refer to her as the defendant.

[2] We acknowledge the amicus brief in support of the defendant submitted by the Disability Law Center, Inc., the Mental Health Legal Advisors Committee, the Center for Public Representation, and the Massachusetts Association for Mental Health.

her arraignment, her defense counsel requested that she be evaluated for competency, pursuant to G. L. c. 123, § 15 (a) (§ 15 [a]).  However, no clinician was available at that time. The judge ordered that the defendant be held without bail overnight and continued the case to the following day for the evaluation.

The next day, a court clinician evaluated the defendant.  A different judge then held a hearing at which the court clinician testified.  The clinician reported that, during the competency evaluation, the defendant apologized several times, appeared fearful, and told the clinician that she "[did] not want to participate in the evaluation."  The clinician further testified that, five weeks prior to the defendant's arrest, her father had taken her to the emergency room of a Boston hospital because she was exhibiting paranoia and odd behavior, was making nonsensical statements, and had not consumed food or water in four days. The defendant was admitted to the psychiatric unit of the hospital at that time.  A few weeks later, after the defendant contacted a crisis intervention team to report that she was having a panic attack, she was again transported to the hospital.  The clinician opined that the defendant appeared to be having symptoms of psychosis and recommended further evaluation of her competency to stand trial.

The judge ordered that the defendant be hospitalized for a competency evaluation, pursuant to § 15 (b). Because there was not a bed available at that time, the judge further ordered that the defendant be held without bail until her next court appearance.

The following day, the defendant filed a petition in the county court pursuant to G. L. c. 211, § 3, requesting that the commitment and detention orders be vacated. The single justice ordered the judge to issue further written findings in connection with the orders. After receiving the additional findings, the single justice allowed the defendant's petition in part. Specifically, the single justice vacated the detention order, concluding that the order was improper.[3] The single justice also concluded that the judge did not err in issuing the commitment order, and accordingly denied relief as to that order.

Discussion. When presented with a petition under G. L. c. 211, § 3, a single justice proceeds in two steps. See S.W., 497 Mass. at   . At the first step, the single justice asks

_____

[3] Additionally, although the judge had purported to "reserve[]" a bail determination pending the § 15 (b) evaluation, the single justice observed that "there does not appear to be any basis upon which the judge could [have done so]," given that the defendant had already been arraigned. See Mass. R. Crim. P. 7 (b) (1) (D), as appearing in 461 Mass. 1501 (2012) (requiring conditions of release, if any, to be determined at time of arraignment).

whether reaching the petition's merits is proper, which generally may depend on, among other things, the absence of adequate alternative remedies or the importance of the petition's subject matter.  Id.  At the second step, the single justice reviews the petition's merits, provided that either the petition has met the requirements of the first step or the single justice has otherwise exercised his or her discretion to consider the merits.  Id.

On appeal, we review a single justice's decision for clear error of law or abuse of discretion.  See Vasquez v. Commonwealth, 481 Mass. 747, 751 (2019).

1.  First step.  For the reasons discussed in S.W., 497 Mass. at    , we exercise our discretion to reach the merits of the detention order.  The petition raises an important issue implicating a fundamental constitutional right, and the single justice exercised his discretion to reach the merits.  We also, for the reasons discussed in S.W., id. at    , exercise our discretion to reach the merits of the commitment order even though the defendant had an adequate alternative remedy:  an appeal to the Appellate Division of the BMC.  See G. L. c. 231, § 108 (party aggrieved by BMC ruling on matter of law may, as of right, appeal from ruling to Appellate Division).  That statutory avenue is the ordinary and appropriate mechanism for challenging § 15 (b) commitment orders.  Cf. Matter of G.P., 473

Mass. 112, 123 (2015), abrogated on other grounds by Matter of a Minor, 484 Mass. 295, 299 n.1 (2020) (commitment orders issued in BMC under G. L. c. 123, § 35, are appealable to Appellate Division pursuant to G. L. c. 231, § 108).

2. Aggrieved party. The Commonwealth argues that we should not reach the merits of the detention order because it was vacated by the single justice and, as such, the defendant is not an "aggrieved" party pursuant to G. L. c. 231, § 114, for purposes of that portion of the single justice's judgment.

Even assuming, without deciding, that the Commonwealth is correct, we nonetheless address the detention order in the exercise of our discretion. "On occasion, we have been willing to express our views on matters not strictly before us . . . particularly when the case has been fully briefed on the merits, when there is a public interest in obtaining a prompt answer to the question, and when the answer to be given is reasonably clear." Brown v. Guerrier, 390 Mass. 631, 632 (1983). All three of these conditions are met here.

First, although the Commonwealth declined to brief the issue and did not pursue a cross appeal, the issue has been fully briefed by the defendant. See Brown, 390 Mass. at 632-633 (expressing views on issue where party who was unsuccessful below failed to file brief, but where successful party "ably briefed" issue). Second, the question of a judge's authority to

detain a criminal defendant in aid of a competency evaluation is a matter of substantial public importance.  Cf. Newton-Wellesley Hosp. v. Magrini, 451 Mass. 777, 782 (2008) ("[i]ssues involving the commitment and treatment of mentally ill persons are generally considered matters of public importance" [citation omitted]).  Third, for the reasons set forth in S.W., 497 Mass. at    , the governing legal principles are clear.  Accordingly, we exercise our discretion to address the merits of the detention order.

3.  Second step.[4]  In assessing the single justice's ruling on the merits, we must address the same legal issues that were before the single justice.  See S.W., 497 Mass. at    .  Accordingly, we address the propriety of the detention and commitment orders in turn.

a.  The detention order.  For the same reasons discussed in S.W., 497 Mass. at    , the judge lacked statutory or inherent

---

[4] During the pendency of this appeal, the defendant completed the competency evaluation and was found competent to stand trial.  Two weeks later, the underlying criminal charge was dismissed without prejudice.  As the Commonwealth acknowledges, this development does not render the commitment order moot because "the defendant has a surviving personal interest in adjudicating whether the nature of her confinement [under § 15 (b)] was wrongful."  Commonwealth v. A.Z., 493 Mass. 427, 430 (2024).  With respect to the detention order, assuming that the issue is now moot, we nonetheless exercise our discretion to decide the issue because it presents a question of public importance that is capable of repetition yet evading review.  See S.W., 497 Mass. at    n.3.

authority to detain the defendant without bail to facilitate a competency evaluation under § 15 (b).  The detention, grounded solely in the unavailability of hospital resources, was not authorized by the governing statutory scheme or the judge's inherent authority.  Accordingly, the single justice correctly vacated the detention order as unlawful.

b.  The commitment order.[5]  The defendant argues that the commitment order must be vacated because the judge erred in determining that a § 15 (b) evaluation was the least restrictive means of assessing the defendant's competency.[6]  We disagree.

---

[5] Among her arguments as to why the commitment order should be vacated, the defendant asserts that it was improper for the single justice to order the judge to make factual findings, and that observations made of the defendant during her overnight detention on March 31, 2025, should have been excluded as the fruit of an unlawful seizure.  The record before us reflects that the defendant did not raise either of these issues before the single justice, despite having had an opportunity to do so. We therefore decline to address these arguments.  See, e.g., Ardon v. Committee for Pub. Counsel Servs., 464 Mass. 1001, 1002 n.3 (2012), cert. denied, 571 U.S. 872 (2013).  Nonetheless, we have not relied on any facts derived from the defendant's overnight detention in our analysis.  In doing so, we express no opinion whether the exclusionary rule applies here, as the defendant proposes.

[6] We see no merit to the defendant's argument that the judge conflated the § 15 (b) analysis with an analysis under G. L. c. 123, § 12.  Although both the court clinician and the judge made passing references to § 12, those references were not material to the determination at issue.  A review of the transcript and the judge's written findings as a whole demonstrate that the judge applied the correct legal standard under § 15 (b).

The record demonstrates that the defendant had a recent history of significant mental health issues suggestive of psychosis, including two admissions to a hospital psychiatric unit in the weeks preceding her arrest.[7]  On the day of her arrest, the defendant refused to enter the court room for arraignment and behaved irrationally in lockup.  That same day, because she was unable to have a logical conversation with the defendant, her own attorney requested an initial competency evaluation pursuant to § 15 (a).  The following day, when the court clinician attempted to conduct that evaluation, the defendant declined to participate.  The defendant was then "brought into the [c]ourtroom in leg restraints due to security concerns."

---

[7] The defendant claims on appeal that she "voluntarily sought mental health assistance on an outpatient basis" and "had an existing psychiatrist at Massachusetts General Hospital," which she contends indicate that involuntary commitment was not the least restrictive means available to determine her competency.  While such evidence is relevant, it is not dispositive.  The fact that the defendant had previously sought voluntary treatment or had an existing psychiatrist does not compel the conclusion that involuntary commitment was not the least restrictive means available, particularly where the record reflects that the defendant refused to participate in the court clinician's initial interview on the day the commitment order was issued.  Cf. Matter of a Minor, 484 Mass. at 310 (although juvenile was scheduled to begin voluntary program within one week, juvenile's commitment under G. L. c. 123, § 35, satisfied due process requirements, as judge "did not have confidence the juvenile actually would attend that program").

These circumstances bear directly on the feasibility of less restrictive alternatives.  As with mental health counselling, see Commonwealth v. A.Z., 493 Mass. 427, 433 (2024), the defendant's refusal to participate in the § 15 (a) evaluation supports the inference that she would likewise refuse to comply with a voluntary outpatient evaluation.  Further, the necessity of physical restraints, following the defendant's refusal to enter the court room, supports the judge's conclusion that the defendant was unlikely to appear for or meaningfully engage in an outpatient evaluation.  Cf. Commonwealth v. Chase, 350 Mass. 738, 740, cert. denied, 385 U.S. 906 (1966) (defendant may be placed in shackles "where there exists any reasonable basis for anticipating that [she] may attempt to escape").

In these circumstances, given the defendant's failure to participate in even a preliminary evaluation, as well as her resistance to court room proceedings more generally, the judge did not err in concluding that there were no "appropriate, less restrictive alternatives" that adequately would have allowed for a determination of the defendant's competency (citation omitted).  A.Z., 493 Mass. at 432.  The judge's determination reflects a reasoned assessment of the defendant's willingness and ability to participate in less restrictive measures.  The judge did not otherwise abuse her discretion in issuing the

commitment order.  Accordingly, the single justice did not err or abuse his discretion in affirming the commitment order.

Conclusion.  For the reasons stated, we conclude that the judge did not err in ordering the competency evaluation of the defendant pursuant to G. L. c. 123, § 15 (b), but that the detention order was unlawful.  Accordingly, the single justice did not abuse his discretion or commit a clear error of law in vacating the detention order while declining to disturb the § 15 (b) commitment order.

Judgment affirmed.